UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Sun Life Assurance Company
of Canada,
    Plaintiff

    v.                                       Civil No. 09-cv-108-SM
                                                Opinion No. 2009 DNH 114
Lara Plaisted; Sarah Plaisted;
William L. Caron; and William L.
Caron Revocable Trust,
    Defendants


**O R D E R**

In 1993, James Plaisted purchased an annuity contract from the plaintiff, Sun Life Assurance Company of Canada. At the time, Plaisted designated one of the defendants, William L. Caron, as the annuity's beneficiary. Approximately nine years later, Plaisted changed the beneficiary to the William L. Caron Revocable Trust. In January of 2009, Plaisted died, at which time the annuity was valued at approximately $120,000. Caron notified Sun Life of Plaisted's death and Sun Life sent Caron (on behalf of the William L. Caron Revocable Trust) information regarding settlement of the annuity. Subsequently, however, two of Plaisted's granddaughters – defendants Lara and Sarah Plaisted – notified Sun Life that they planned to challenge the distribution of the annuity in the probate court.

Faced with competing claims to the roughly $120,000 annuity, Sun Life filed this interpleader action, noting that it is merely a stakeholder and has no beneficial interest in the proceeds of the annuity. Sun Life also seeks a declaratory judgment, declaring the interest (if any) of each named defendant in the proceeds of the annuity. The named defendants all move to dismiss the interpleader suit or, in the alternative, to stay it. Sun Life objects. For the reasons set forth below, defendants' motion to dismiss or stay is denied.

## Discussion

Based upon the papers filed by the parties, it appears that there are at least three legal proceedings currently pending in state court which relate in some way to the annuity at issue in this case and/or the estate of Mr. Plaisted: (1) the probate proceeding involving Mr. Plaisted's estate, currently pending in the Strafford County Probate Court; (2) a declaratory judgment action brought by defendant Caron in the Strafford County Superior Court, seeking a declaration that the William L. Caron Revocable Trust is the sole beneficiary of the annuity; and (3) a petition to impose a constructive trust upon the proceeds of the annuity, brought by the decedent's granddaughters, defendants Lara and Sarah Plaisted, in the Strafford County Superior Court. Although Caron and the decedent's granddaughters disagree as to

the proper distribution of the annuity, they do appear to agree on one issue: they all would prefer to litigate their competing claims to the asset in the state superior and probate courts. Sun Life, however, prefers to resolve this matter in a single (federal) forum, rather than in three state court proceedings.

Defendants move the court to abstain from exercising jurisdiction over Sun Life's interpleader action, but fail to articulate the legal basis for the relief they seek. Instead, they simply suggest that Sun Life's decision to file this interpleader action somehow constitutes "impermissible forum shopping," Motion to Dismiss (document no. 12) at para. 5, and say that Sun Life "insisted on federal Interpleader despite having no real interest concerning the underlying claims or the jurisdiction," id. at para. 9 (emphasis supplied). But, as Sun Life readily concedes, its decision to interplead the funds was motivated precisely by the fact that it has no interest in who gets the annuity's proceeds. Sun Life is only interested in depositing the disputed proceeds and obtaining a discharge from its contractual obligation and exposure to potential liability. See generally 28 U.S.C. § 2361. Sun Life presumably wishes to minimize the time, effort, and attorneys' fees it must devote to this matter – an interest defendants should share, since stakeholders in interpleader actions are often awarded costs and

attorneys' fees.  See, e.g., Ferber Co. v. Ondrick, 310 F.2d 462, 467 n.5 (1st Cir. 1962) (suggesting that it is "customary" to award fees to a disinterested stakeholder).  See also Sun Life Assur. Co. of Canada v. Sampson, 556 F.3d 6, 8 (1st Cir. 2009) ("It is settled that a federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action whenever it is fair and equitable to do so.") (citations and internal punctuation omitted).

Although the legal basis for the relief defendants seek is not readily apparent in their joint motion to dismiss, the decedent's granddaughters' reply to Sun Life's objection is instructive.  In it, the granddaughters assert that the court should dismiss this action under the "probate exception to this court's diversity jurisdiction."  Defendant Plaisteds' Reply (document no. 18) at 3.  They have, however, failed to demonstrate that the probate exception is applicable in this case, nor have they shown that this court otherwise lacks subject matter jurisdiction.

I.   Subject Matter Jurisdiction and Interpleader Actions.

Sun Life's complaint rests federal subject matter jurisdiction upon the provisions of 28 U.S.C. §§ 1335 (interpleader) and 1332 (diversity of citizenship).  Federal

4

jurisdiction over an interpleader action is premised on diversity of citizenship, although complete diversity is not required. See State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 530 (1967). The existence of diversity in an interpleader action is determined without regard to the plaintiff-stakeholder's citizenship. Rather, there is sufficient diversity to support federal jurisdiction if claims are adverse to the fund, the claims are adverse to each other, and at least two of the claimants to the fund are citizens of different states. Id. Here, each of those factors appears to be present and the amount in controversy meets the threshold requirement.[1] Consequently, barring the proper application of the probate exception, the court has subject matter jurisdiction over this interpleader action.

## II.  The Probate Exception.

In discussing the "probate exception" to federal subject matter jurisdiction, the United States Supreme Court recently noted that the exception is not compelled by the Constitution or any federal statute. Rather, it is a "judicially created

---

[1] The jurisdictional minimum for "statutory interpleader" under § 1335 differs from "rule interpleader" under Fed. R. Civ. P. 22 in that the jurisdictional minimum for the amount in controversy under the statutory version is $500, while the minimum for rule interpleader, which falls under the general rules of diversity jurisdiction, remains $75,000.

doctrine[] stemming in large measure from misty understandings of English legal history." Marshall v. Marshall, 547 U.S. 293, 299 (2006). The Court also observed that, since the inception of the probate exception (and the related "domestic relations exception"), "courts have sometimes lost sight of [their obligation to exercise jurisdiction over cases properly before them] and have rendered decisions expansively interpreting the two exceptions." Id. Accordingly, the Court sought both to clarify and to limit the scope of the probate exception, holding that it:

> reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of <u>property that is in the custody of a state probate court</u>. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

Id. at 311-12 (emphasis supplied). See also Markham v. Allen, 326 U.S. 490, 494 (1946) ("[W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, . . . it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.") (citations omitted).

This case involves none of the three limited circumstances in which the probate exception applies.  Sun Life's interpleader and declaratory judgment action does not involve the probate or annulment of the decedent's will, nor does it involve the administration of his estate, nor does it involve the disposition of property in the custody of the state probate court.  As the decedent's granddaughters concede, only "if [they] prevail in the pending petition to impose a constructive trust in the Strafford County Superior Court" will the proceeds of the annuity be included in the decedent's estate and, therefore, subject to the probate court's jurisdiction.  Defendant Plaisteds' Reply Brief (document no. 18) at 4.

Viewed slightly differently, the annuity is not currently within the decedent's estate and, therefore, is not subject to the probate court's jurisdiction.  See, e.g., In re Estate of McIntosh, 146 N.H. 474, 478 (2001) ("[T]he proceeds of these types of accounts or policies [i.e., IRA accounts, life insurance policies, joint bank accounts with a right of survivorship, and annuities] are not a part of an originator's estate, but instead pass automatically at death to the named beneficiary.") (citations omitted).

**Conclusion**

The "probate exception" to the exercise of federal subject matter jurisdiction is inapplicable in this case.  And, as discussed above, jurisdiction over Sun Life's interpleader and declaratory judgment action properly lies in this court.  Defendants have, then, failed to carry their burden.  The joint motion to dismiss or, in the alternative, to stay these proceedings (document no. 12), is denied.

The clerk shall schedule a pretrial status conference.  Upon payment of the annuity's proceeds into court, an order discharging Sun Life Assurance Company of Canada will issue.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

July 27, 2009

cc:  Byrne J. Decker, Esq.
     Michele E. Kenney, Esq.
     Michael E. Chubrich, Esq.
     Stephan P. Parks, Esq.